UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY C. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13 CV 766 ACL |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM

Plaintiff Mary C. Morgan brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for child's disability insurance benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Morgan's severe impairments, she was not disabled prior to attaining age 22 as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Morgan has a lengthy history of applications for benefits. On May 5, 1986, she filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 14.) The State agency found that Morgan's hearing impairment met the listing for deafness since May 1, 1986, and she has been receiving SSI since June 1987. *Id.* She filed an application for Disability Insurance Benefits under Title II on April 22, 1997, which was denied at the State agency level due to Morgan's lack of insured status. *Id.*

Morgan filed the application at issue—for disabled child's benefits under Title II—on March 28, 2008, claiming an alleged onset date of January 22, 1981. (Tr. 296-99.) Morgan was born in 1959, and was 21 years of age at the time of her alleged disability onset date. (Tr. 20.) Her application was denied initially. (Tr. 122-24.) Morgan's claim was denied by an ALJ on July 25, 2011. (Tr. 84-98.) On September 10, 2012, the Appeals Council denied Morgan's claim for review. (Tr. 99-102.)

Morgan appealed to federal district court. On December 9, 2013, the United States District Court for the Eastern District of Missouri[2] remanded the matter to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g), because the agency was unable to locate Morgan's file. (Doc. 19.) After remand, the agency located the claim file, and held two administrative hearings. (Tr. 13-22.) A sign language interpreter was present to assist Morgan at both hearings. (Tr. 13.) On August 22, 2017, an ALJ issued a new decision finding Morgan was not disabled prior to attaining age 22. (Tr. 13-22.) The decision of the second ALJ stands as the final decision of the Commissioner. Defendant subsequently moved to reopen the instant

---

[2]Retired United States Magistrate Judge Lewis M. Blanton.

case, which the undersigned granted.[3]

In this action, Morgan first argues that "the decision of the administrative law judge did not properly consider all the evidence of record in finding severe medically determinable impairments, and thus, impermissibly discarded the evidence of record regarding a cognitive impairment." (Doc. 29 at p. 6.) She also contends that the ALJ's "residual functional capacity is not supported by some evidence, as required under the standards contained in *Singh* and *Lauer*." *Id.* at p. 9.

## II. The ALJ's Determination

The ALJ first found that Morgan had not attained age 22 as of January 22, 1981, her alleged onset date. (Tr. 16.) Morgan had not engaged in substantial gainful activity since her alleged onset date. *Id.* The ALJ next found that Morgan had the following severe impairment prior to attaining age 22: bilateral sensorineural hearing loss. (Tr. 17.) The ALJ found that Morgan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

As to Morgan's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to work in a quiet environment such as a library, private office, or museum. She could not perform work that required hearing other than loud noises intended to alert her to dangers or hazards in the workplace. She could not perform work that involves interaction with the public.

---

[3]The district court retains jurisdiction after a sentence six remand. *See Travis v. Astrue*, 477 F.3d 1037, 1039 (8th Cir. 2007).

(Tr. 18.) The ALJ found that Morgan had no past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as routing clerk and linen room attendant. (Tr. 21.)

The ALJ therefore concluded that Morgan was not under a disability, as defined in the Social Security Act, at any time prior to January 26, 1981, the date she attained age 22. (Tr. 22.)

The ALJ's final decision reads as follows:

> Based on the application for child's insurance benefits filed on March 28, 2008, the claimant was not disabled as defined in section 223(d) of the Social Security Act prior to January 26, 1981, the date she attained age 22.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must

indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Morgan first argues that the ALJ failed to properly consider her cognitive impairment at step two. In her related second claim, she contends that the ALJ erred in determining her RFC.

"An impairment...is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities "mean the abilities and aptitudes necessary to do most jobs," including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). The burden of showing a severe impairment at step two of the sequential evaluation

process rests with the claimant, and the burden is not great. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001); *see also Gilbert v. Apfel*, 175 F.3d 602, 604–05 (8th Cir. 1999) (court to apply "cautious standard" at step 2 of evaluation process). "While '[s]everity is not an onerous requirement for the claimant to meet...it is also not a toothless standard.'" *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Kirby,* 500 F.3d at 708).

The ALJ addressed Morgan's alleged cognitive impairment in his step two analysis. He stated that, "though the claimant's representative argued that there is evidence of a cognitive impairment, the evidence is limited to testing from when the claimant was substantially younger." (Tr. 17.) The ALJ continued that "there is no information relevant to the proscribed period, and noting that the claimant was able to graduate from high school, the undersigned finds insufficient evidence to support a medically determinable cognitive impairment." *Id.*

Morgan argues that evidence submitted from the Special School District of St. Louis County ("Special School District"), including IQ testing, supports the presence of a cognitive impairment during the relevant period. That evidence is summarized as follows:

The Face Sheet from the Special School District indicated Morgan had a "language impairment" during the years 1965, 1966, 1967, 1968, and 1969. (Tr. 572.)

Morgan underwent a "brief and fairly informal evaluation" performed by the Special School District on August 7, 1963, at the age of four-and-a-half. (Tr. 582.) She was successful on tests from a two-year age level through a three-and-a-half year age level when the tests did not require any speech from her and did not require verbal directions. The examiner noted that it seemed apparent that Morgan "was hearing the examiner when she spoke but she apparently got no meaning from what she heard; and she made some sounds but nothing that even

approached intelligible speech." *Id.* The examiner "found it necessary to present materials and tasks as to a deaf child." *Id.*

A "Report of Special District Evaluation Clinic" dated September 24, 1964, noted that Morgan had undergone IQ testing, which revealed an IQ score of 79. (Tr. 573.) Morgan was also administered the Nebraska Test of Learning Aptitude, which indicated Morgan functioned "within the high educable mentally retarded to borderline range of intelligence." (Tr. 574.)

A Psychological Re-Evaluation was performed on January 30, 1968. Morgan obtained an IQ score of 75 on the "Goodenough Intelligence Test," and a Performance IQ of 80 on the Wechsler Intelligence Scale for Children. (Tr. 577.) It was noted that Morgan's speech was "not too bad," but her language, especially receptive, was "poor." *Id.* Morgan underwent the "Bender-Gestalt Test," which was "immature looking" and "suggests possible organicity as well." *Id.* It was concluded that Morgan's overall intellectual abilities were "at the borderline level on performance tasks," and she was "unable to respond to the verbal portion of the test with any success." *Id.*

An Annual Progress Report for the 1974-1975 School Year at the Special School District, Auditorily Impaired Classes, assessed Morgan's progress as follows: Reading Level of 4th to 5th grade; Arithmetic Level of 5th to 6th grade; and Social Studies Level of 5th grade. (Tr. 589.) Morgan was sixteen years of age at the time.

The Court finds that the ALJ erred by failing to properly consider Morgan's borderline intellectual functioning. At the administrative hearing, Morgan's attorney referred the ALJ to Morgan's educational records discussed above. He argued that the records "indicate that she had significant problems with IQ," and that achievement testing was indicative of a "marked level of cognitive impairment." (Tr. 663.) Despite being on notice that Morgan's intellectual

functioning was at issue, the ALJ did not discuss the educational or psychological evidence at all.  Rather, he dismissed Morgan's claim of a cognitive impairment on the basis that the educational evidence "wasn't relevant to the proscribed period," and Morgan was able to graduate high school.  (Tr. 12.)

"Borderline Intellectual Functioning describes individuals with IQs between 71 and 84." *Byes v. Astrue*, 687 F.3d 913, 914 (8th Cir. 2012).  "[B]orderline intellectual functioning should be considered a severe impairment" when "the diagnosis is supported by sufficient medical evidence."  *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997)); *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (remanding because the ALJ did not include borderline intellectual functioning as a severe impairment at step two of the sequential analysis).

Here, Morgan's IQ scores, obtained when she was five and nine years of age, were all within the range of borderline intellectual functioning.  She was found to be "within the high educable mentally retarded to borderline range of intelligence" at the age of five, and within the borderline range of intellectual functioning at the age of nine.  (Tr. 574, 577.)  The ALJ never directly discussed these scores, other than noting the scores were not obtained during the relevant period.  In order to obtain child disability benefits, Morgan has to demonstrate her disability began before attaining age twenty-two.  *See* 20 C.F.R. § 404.350(a)(5).  This case presents challenges due to the relevant period having ended approximately thirty-nine years ago. Although it is true there is no evidence of IQ testing performed closer to the end of the relevant period, the scores provided are still within the relevant period and are undoubtedly relevant.

The ALJ's other rationale for discrediting this evidence—that Morgan graduated high school—is also unpersuasive.  The educational records reveal Morgan took special education

classes.  When Morgan was sixteen years of age, achievement testing indicated she was performing at the 4th to 5th grade level in Reading, 5th to 6th grade level in Arithmetic, and 5th grade level in Social Studies.  (Tr. 589.)  This level of functioning is consistent with the earlier IQ testing.  The fact that Morgan was able to graduate from high school under these circumstances does not support the ALJ's finding that no medically determinable cognitive impairment existed.  Thus, the ALJ's evaluation of Morgan's intellectual functioning at step two is not supported by substantial evidence.

A failure to find an impairment severe at Step 2 may be harmless where the ALJ continues with the sequential evaluation process, and considers all impairments, both severe and non-severe.  *See, e.g. Lorence v. Astrue,* 691 F. Supp.2d 1008, 1028 (D. Minn. 2010); *Johnson v. Commissioner of Social Security,* 2012 WL 4328413, *21 (D. Minn. July 11, 2012) (collecting cases).  Here, however, the harmless error standard does not apply because the ALJ found that Morgan's borderline intellectual functioning was not a medically determinable impairment.  He did not consider evidence of Morgan's borderline intellectual functioning together with her other impairments in determining her RFC.  The ALJ only included limitations related to Morgan's hearing impairment and did not limit Morgan to simple work or otherwise address the impact of her borderline intellectual functioning.

Where an ALJ errs in his failure to consider one of the claimant's impairments, the resulting RFC assessment is called into question inasmuch as it does not include all of the claimant's limitations.  *See Holmstrom v. Massanari,* 270 F.3d 715, 722 (8th Cir. 2001).  RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations."  20 C.F.R. § 416.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical

impairments." *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995)).

Because the ALJ did not take into consideration evidence of Morgan's borderline intellectual functioning when formulating her RFC, reversal and remand is required.

## **Conclusion**

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. Upon remand, the Commissioner should consider the educational records, including IQ scores and psychological testing, and formulate a new RFC that is supported by substantial evidence. The Commissioner should also consider the effects Morgan's borderline intellectual functioning has on her hearing impairment.

        s/Abbie Crites-Leoni
        ABBIE CRITES-LEONI
        UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2020.